ON REMAND FROM THE SUPREME COURT

DELL, J.
The supreme court quashed this court’s decision in Nagel v. State, 739 So.2d 1242 (Fla. 4th DCA 1999), and remanded for further proceedings in light of its opinion in Goodwin v. State, 751 So.2d 537 (Fla.1999). On remand, we reverse appellant’s conviction for driving under the influence (DUI).
Appellant was charged by information with possession of a schedule IV substance, Darvocet, and DUI, arising out of an incident that occurred on April 12,1998. Appellant pled not guilty to the charges and a three day trial commenced. At trial, the state presented the testimony of the arresting officer, an officer that assisted in appellant’s arrest, a Breathalyzer technician, and a chemist, as well as a videotape of appellant after his arrest. Appellant testified in his own defense.
Officer Crowell, the arresting officer, testified that he observed appellant make a wide turn as he was leaving Dunkin Donuts in the early morning hours of April 12, 1998. He stated that he followed appellant and pulled him over because appellant’s pick-up truck failed to stay in one lane and crossed the divider four times. Officer Crowell further testified that appellant’s eyes were bloodshot and glassy, he smelled of alcohol, his speech sounded very slurred, and he stumbled and staggered to the rear of his truck, where he leaned against the vehicle. When Officer Crowell requested that appellant perform the walk-and-turn exercise, the officer testified that appellant was very unsteady, swaying tremendously, as if he would fall and injure himself. Officer Crowell stated that for appellant’s safety he did not request other field sobriety tests. Officer Crowell added that there was no doubt in his mind that appellant was under the influence.
Officer Crowell’s observations and conclusions were corroborated by Officer Tawil, who assisted Officer Crowell in the traffic stop. Officer Tawil testified that he “could smell the odor of an unknown alcoholic beverage coming from [appellant’s] person.” He also testified that appellant’s speech was slurred, he had bloodshot eyes, he was having trouble standing, his feet appeared to be heavy, as he walked, and he was dragging. Officer Tawil concluded that appellant appeared to be under the *837 influence of alcohol. Officer Tawil further testified that, as he approached appellant’s truck, he observed a gun in plain view. At this point, appellant was handcuffed, his truck was searched, and a clear film canister of six pink pills, later identified as Darvocet, were found in the truck. Thereafter, appellant was taken to jail where the police learned that he had a valid permit for the gun.
Javier Forteza, a Breathalyzer technician with the Palm Beach Sheriffs Office, videotaped appellant at the jail. He testified that appellant had bloodshot eyes and slurred speech. He also testified that appellant smelled of alcohol, was swaying and sluggish, but did not stumble or require assistance. He further testified that appellant refused to take the Breathalyzer test.
Appellant testified that he awoke at 4:30 a.m. for work, came home around 2:30 p.m., and returned to work around 6:30 p.m. on April 11, 1998. He explained that he took a Valium at approximately 6:00 p.m." and had a rum and Coke at about 7:30 p.m. Some time after 2:00 a.m. on April 12, appellant said that he left work and drove to a Dunkin Donuts, where he got something to eat. He claims that he was “dog-tired” at this point. He said he used mouthwash after he left the restaurant to get rid of the taste in his mouth from the food. He also admitted that he “could have” made a wide turn from the parking lot, he “probably did go across the white line” into the other lane, and he swerved. However, he testified that he kept his truck to the left side of the road to avoid the dips in the road. Both police officers testified that the road was paved and smooth. Appellant stated that he did not stumble when he got out of his truck, he was never asked to perform the walk-and-turn test, and that he refused to take the Breathalyzer test because he felt like he was being “railroaded” by the police when they charged him with a drug offense for carrying his father’s pain medication.
During the course of appellant’s testimony, appellant admitted that he had friends in the Riviera Beach Police Department, but denied that he tried to use his friends from the police department to call Officer Crowell to get the charges dropped. He said he did mention that he had a DUI and an illegal drug charge pending. On redirect, appellant claimed that he discussed the charges with his police officer friends because he was concerned about the drug charge and being a convicted felon because he feared he would lose his captain’s license, which was necessary for his fishing business.
On rebuttal, the state recalled Officer Crowell to impeach appellant’s prior inconsistent statement that he did not ask his police officer friends to call Officer Crowell to get his charges dropped. The trial court permitted Officer Crowell to testify, over appellant’s hearsay objection, that a Riviera Beach police officer called him regarding this case and asked him if he “could possibly cut someone a break or not.”
The jury found appellant not guilty of possessing a schedule IV substance, but guilty of DUI. The trial court sentenced appellant to one year of probation and sixty days in jail to be served on long weekends. On appellant’s motion to modify his sentence, the trial court reduced the jail portion of appellant’s sentence to thirty days followed by ninety days in-house arrest.
On appeal, appellant contends that he was prejudiced and denied a fair trial by the admission of Officer Crowell’s rebuttal testimony concerning an out-of-court statement by another police officer. He argues that this testimony suggested that he tampered with a witness, even though the state failed to prove that the phone call was attributed to him.
We conclude that the trial court erred when it permitted Officer Crowell to testify about an out-of-court statement made by another police officer. This testi *838 mony was not only hearsay, but the record shows that the state improperly used it to impeach appellant’s testimony. On rebuttal, Officer Crowell’s testimony suggested that appellant tampered with a witness and the case against him. However, the state failed to present evidence that the telephone call was made with appellant’s authority, consent, or knowledge. See Jones v. State, 385 So.2d 1042, 1043-44 (Fla. 1st DCA 1980), disapproved on other grounds, Justus v. State, 438 So.2d 358 (Fla.1983)(reversing and remanding for a new trial when the state insinuated that the defendant, or someone connected with him, had made threats against a witness to keep her from testifying without presenting any evidence that the attempt was made with the actual participation, knowledge, or authorization of the defendant).
In State v. DiGuilio, 491 So.2d 1129 (Fla.1986), the supreme court stated:
The harmless error test ... places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction.
Id. at 1135.
Appellant’s conviction came down to whether the jury chose to believe appellant’s or the officers’ version of the events that transpired that night. Because we cannot conclude beyond a reasonable doubt that the admission of this testimony did not affect the jury’s verdict in this case, we hold that appellant must be granted a new trial.
Accordingly, we reverse appellant’s conviction and sentence for driving under the influence and remand for a new trial.
REVERSED and REMANDED.
SHAHOOD, J., concurs.
STONE, J., dissents with opinion.